**ROYAL AND SUN ALLIANCE INSURANCE COMPANY OF CANADA, Plaintiff–Appellant,**

v.

**CENTURY INTERNATIONAL ARMS, INC. and Century Arms, Inc., Defendants–Appellees.**

Docket No. 05–5134–CV.

United States Court of Appeals, Second Circuit.

Argued: April 12, 2006.

Decided: Oct. 10, 2006.

---

Erick J. Kirker, Cozen O'Connor, Philadelphia, PA, for Plaintiff–Appellant.

Paul Indig, Renzulli Law Firm, LLP (John F. Renzulli, on the brief), New York, NY, for Defendants–Appellees.

Before McLAUGHLIN and CALABRESI, Circuit Judges, and LYNCH, District Judge.*

GERARD E. LYNCH, District Judge.

Plaintiff-appellant Royal and Sun Alliance Insurance Company of Canada ("RSA") seeks damages from defendants-appellees Century International Arms, Inc. and Century Arms, Inc. (collectively "Century America") for the reimbursement of defense expenses and the payment of deductibles it claims to be owed under various insurance policies. Century America moved to dismiss the complaint in deference to a pending action previously filed by RSA in Canada against Century America's Canadian affiliate, Century International Arms Ltd. ("Century Canada"),

---

* The Honorable Gerard E. Lynch, of the United States District Court for the Southern District of New York, sitting by designation.

based on the same insurance policies and the same factual allegations. The United States District Court for the Southern District of New York (Deborah A. Batts, *Judge),* granted defendants' motion, concluding that considerations of comity warranted dismissal of RSA's action against Century America.

On appeal, RSA argues that the dismissal was improper because the district court failed to give proper weight to the "virtually unflagging obligation ... to exercise the jurisdiction given [it]." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). We agree and therefore vacate and remand for further proceedings.

## BACKGROUND

Century America is in the business of manufacturing and distributing firearms and munitions.[1] In connection with that business, Century America and its affiliate Century Canada obtained liability insurance policies from RSA for the time period between June 12, 1991, and March 25, 1994. During the policy period, Century America was sued by a number of individuals who alleged that they had suffered injuries caused by defects in Century America's products. RSA defended these lawsuits pursuant to the terms of the insurance policies, and eventually negotiated settlements with the various plaintiffs and paid the settlement amounts on behalf of Century America. At the conclusion of the actions, RSA requested reimbursement for defense expenses and deductibles it claimed to be owed under the policies. No payment was received.

RSA and Century Canada are both Canadian corporations, and under the insurance policies Century Canada is named as the first insured party while Century America is listed as an additional insured. Accordingly, when RSA did not receive the money it believed it was owed under the policies, RSA filed an action in Superior Court, Province of Quebec, District of Montreal, Canada, against Century Canada, seeking payment for its expenses and deductibles. In its response to the Canadian action, Century Canada asserted that the expenses and deductibles for which RSA sought reimbursement "relate[d] to events which occurred in the United States and claims asserted against name[d] insureds other than ... [Century Canada]," Joint Appx. at 42, and that under the terms of the policies, the rights and obligations of RSA, Century Canada, and Century America apply "[s]eparately to each insured against whom claim is made or 'action' is brought," *id.* at 41.

Given Century Canada's averment that RSA had, in effect, sued the wrong insured party in the Canadian action, RSA filed the present complaint in the Southern District of New York against Century America. Soon after the case was filed, Century America moved to dismiss the complaint in favor of RSA's pending action against Century Canada. The district court granted Century America's motion to dismiss, stating that it had "the inherent power to stay or dismiss an action based on the pendency of a related proceeding in a foreign jurisdiction," but recognizing that its discretion was "limited by its obligation to exercise jurisdiction." *Royal & Sun Alliance Ins. Co. v. Century Int'l Arms, Inc.,* No. 03 Civ. 7256, 2005 WL 2087870, at *2 (S.D.N.Y. Aug.26, 2005). In exercising its

---

**1.** Because Century America moved to dismiss the action, the district court accepted as true the facts asserted by RSA in the complaint.

We do the same. *See Shah v. Meeker,* 435 F.3d 244, 248 (2d Cir.2006).

discretion, the district court concluded that the existence of a parallel proceeding in Canada involving Century America's affiliate, coupled with Century America's consent to jurisdiction in Canada, militated in favor of dismissal. This appeal followed.

## DISCUSSION

■■■ We review a district court's dismissal of an action based on considerations of international comity for abuse of discretion. *JP Morgan Chase Bank v. Altos Hornos De Mexico, S.A.,* 412 F.3d 418, 422–23 (2d Cir.2005). However, because we are reviewing a court's decision to abstain from exercising jurisdiction, our review is "more rigorous" than that which is generally employed under the abuse-of-discretion standard. *Hachamovitch v. De-Buono,* 159 F.3d 687, 693 (2d Cir.1998). "In review of decisions to abstain, there is little practical distinction between review for abuse of discretion and review *de novo.*" *Id.* Of course, we review *de novo* a district court's conclusions of law. *JP Morgan Chase Bank,* 412 F.3d at 423.

■■■ Century America argues that the district court's decision was supported by the doctrine of international comity abstention. International comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience." *Hilton v. Guyot,* 159 U.S. 113, 163–64, 16 S.Ct. 139, 40 L.Ed. 95 (1895). While the doctrine can be stated clearly in the abstract, in practice we have described its boundaries as "amorphous" and "fuzzy." *JP Morgan Chase Bank,* 412 F.3d at 423, *quoting* Harold G. Maier, *Extraterritorial Jurisdiction at a Crossroads: An Intersection Between Public and Private International Law,* 76 Am. J. Int'l L. 280, 281 (1982). In addition to its imprecise application, even where the doc-

trine clearly applies it "is not an imperative obligation of courts but rather is a discretionary rule of 'practice, convenience, and expediency.'" *Id.,* quoting *Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru,* 109 F.3d 850, 854 (2d Cir.1997).

Often, a party invoking the doctrine of international comity seeks the recognition of a foreign judgment. In this case, however, Century America argues that concerns of comity favor the recognition of a pending foreign proceeding that has yet to reach final judgment, and that proper deference to that proceeding requires abstention in domestic courts. This type of comity has been termed the "comity of the courts." *See* Joseph Story, Commentaries on the Conflict of Laws § 38 (1834) (distinguishing between the comity of the courts and the comity of nations), *cited in Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 817, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993) (Scalia, J., dissenting).

■■■ Generally, concurrent jurisdiction in United States courts and the courts of a foreign sovereign does not result in conflict. *China Trade & Dev. Corp. v. M.V. Choong Yong,* 837 F.2d 33, 36 (2d Cir.1987). Rather, " '[p]arallel proceedings in the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other.' " *Id.,quoting Laker Airways, Ltd. v. Sabena Belgian World Airlines,* 731 F.2d 909, 926–27 (D.C.Cir. 1984), *citing Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236. The mere existence of parallel foreign proceedings does not negate the district courts' "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236.

■■■ We have recognized one discrete category of foreign litigation that generally

requires the dismissal of parallel district court actions—foreign bankruptcy proceedings. A foreign nation's interest in the "equitable and orderly distribution of a debtor's property" is an interest deserving of particular respect and deference, and accordingly we have followed the general practice of American courts and regularly deferred to such actions. *See Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.,* 825 F.2d 709, 713–14, 715 (2d Cir.1987); *accord JP Morgan Chase Bank,* 412 F.3d at 424; *Finanz AG Zurich v. Banco Economico S.A.,* 192 F.3d 240, 246 (2d Cir.1999); *Allstate Life Ins. Co. v. Linter Group Ltd.,* 994 F.2d 996, 999 (2d Cir.1993). Outside the bankruptcy context, we have yet to articulate a list of factors a district court should consider when exercising its discretion to abstain in deference to pending litigation in a foreign court. However, whatever factors weigh in favor of abstention, "[o]nly the clearest of justifications will warrant dismissal." *Colorado River,* 424 U.S. at 819, 96 S.Ct. 1236. The task of a district court evaluating a request for dismissal based on a parallel foreign proceeding is not to articulate a justification *for* the exercise of jurisdiction, but rather to determine whether exceptional circumstances exist that justify the surrender of that jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 25–26, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *see also Colorado River,* 424 U.S. at 813, 96 S.Ct. 1236 ("Abstention from the exercise of federal jurisdiction is the exception, not the rule."). The exceptional circumstances that would support such a surrender must, of course, raise considerations which are not generally present as a result of parallel litigation, otherwise the routine would be considered exceptional, and a district court's unflagging obligation to exercise its jurisdiction would become merely a polite request.

Appellees contend that the above standards, articulated by the Supreme Court in *Colorado* River and *Moses H. Cone,* do not apply to the present matter because those cases involved abstention in favor of parallel state proceedings while the parallel action here at issue is pending in a foreign jurisdiction. Appellees' effort to distinguish these precedents is accurate, as far as it goes, but it does not go far. The factors a court must weigh in exercising its discretion to abstain in deference to parallel proceedings will indeed differ depending on the nature of the proceedings. For example, if the parallel proceeding is in a foreign jurisdiction, the district court need not consider the balance between state and federal power dictated by our Constitution. Conversely, if the parallel proceeding is in a state court, the district court need not concern itself with issues of international relations. However, while the relevant factors to be considered differ depending on the posture of the case, the starting point for the inquiry remains unchanged: a district court's "virtually unflagging obligation" to exercise its jurisdiction. *Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236. In weighing the considerations for and against abstention, a court's "heavy obligation to exercise jurisdiction" exists regardless of what factors are present on the other side of the balance. *Id.* at 820, 96 S.Ct. 1236; *see also Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.,* 180 F.3d 896, 898 (7th Cir.1999) (applying "the same general principles" of *Colorado River* to international abstention); *Ingersoll Milling Mach. Co. v. Granger,* 833 F.2d 680, 685 (7th Cir.1987) (stating that *Colorado River* and *Moses H. Cone* serve as a "helpful guide" when applied to cases of international abstention); cf. *Bigio v. Coca–Cola Co.,* 239 F.3d 440, 454 (2d Cir. 2000) (as amended) ("When a court dismisses a complaint in favor of a foreign forum pursuant to the doctrine of interna-

tional comity, it declines to exercise jurisdiction it admittedly has.").

The Supreme Court has recognized that a decision to abstain from exercising jurisdiction based on the existence of parallel litigation "does not rest on a mechanical checklist, but on a careful balancing of the important factors ... as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. 927. "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colorado River*, 424 U.S. 818–19, 96 S.Ct. 1236, *citing Landis v. N. Am. Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 81 L.Ed. 153 (1936); *see also Moses H. Cone*, 460 U.S. at 15, 103 S.Ct. 927 (stating that *Colorado River* did not "prescribe a hard-and-fast rule for dismissals of this type, but instead described some of the factors relevant to the decision").

■ In the context of parallel proceedings in a foreign court, a district court should be guided by the principles upon which international comity is based: the proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency. *See Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1518 (11th Cir.1994); *see also United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F.Supp.2d 198, 212 (S.D.N.Y.2002). Proper consideration of these principles will no doubt require an evaluation of various factors, such as the similarity of the parties, the similarity of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction. *See, e.g., Finova Capital Corp.*, 180 F.3d at 898–99; *see also Bigio*, 239 F.3d at 454. This list is not exhaustive, and a district court should examine the "totality of the circumstances," *Finova Capital Corp.*, 180 F.3d at 900, to determine whether the specific facts before it are sufficiently exceptional to justify abstention.

■ In the present case, the district court did not identify any exceptional circumstances that would support abstention, and therefore the dismissal of the action was an abuse of discretion. The district court's decision to dismiss the action was based on four factors: the existence of the Canadian action against Century Canada, Century America's consent to jurisdiction in Canada, the affiliation between Century America and Century Canada, and the adequacy of Canadian judicial procedures. These factors led the district court to conclude that the action in Canada was a parallel action that provided an adequate forum for RSA's claims, and that therefore a dismissal of the case was warranted.

■ The district court's conclusion that the Canadian action is adequate and parallel merits a brief discussion. Century Canada and Century America are affiliated but separate entities. For two actions to be considered parallel, the parties in the actions need not be the same, but they must be substantially the same, litigating substantially the same issues in both actions. *See Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir.1998); *see also Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1156 (7th Cir.1990) ("Suits are parallel if substantially the same parties are litigating substantially the same issues simultaneously in two fora."). Whether Century Canada and Century America are substantially the same party for purposes

of the relevant insurance policies was an issue raised in the Canadian action, where Century Canada asserted that it is not responsible for the obligations of Century America under the policies. The district court recognized that this issue was unsettled, but concluded that the question of which company is liable to RSA should be resolved in Canada. The fact that Century America is not a party to the Canadian action did not, in the district court's view, present a problem for the unified adjudication of RSA's claims because Century America had consented to the jurisdiction of the Canadian courts.

On appeal, RSA argues that Century America's consent to jurisdiction is small beer, because the statute of limitations has expired on RSA's potential claim against Century America in Canada. This issue was not raised or addressed in the district court, but neither the district court nor RSA can be faulted for any oversight. In response to Century America's motion, RSA had argued that Century America was not subject to the jurisdiction of the Canadian courts; Century America did not consent to jurisdiction in Canada until its reply brief in the district court. Joint Appx. at 131. Accordingly, RSA was not afforded an opportunity to respond regarding other reasons why Canada might not be an adequate forum, such as the statute of limitations, and the issue was never presented to the district court for consideration.

■■■ Whether a statute of limitations renders a foreign jurisdiction inadequate for purposes of international comity abstention is a question we have not previously addressed. In the context of a motion to dismiss for *forum non conveniens,* a foreign jurisdiction is not adequate unless it "will permit [the plaintiff] to litigate the subject matter of its dispute." *Norex Petroleum Ltd. v. Access Indus., Inc.,* 416 F.3d 146, 159 (2d Cir.2005). However, while "abstention doctrines and the doctrine of *forum non conveniens* proceed from a similar premise ... [,] abstention doctrine is of a distinct historical pedigree, and the traditional considerations behind dismissal for *forum non conveniens* differ markedly from those informing the decision to abstain." *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 722–23, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996).

In any event, we need not decide whether Century Canada and Century America are sufficiently similar to support a finding that the Canadian action is parallel to this case. Nor need we decide whether statute-of-limitations problems render a foreign forum inadequate in the context of international comity abstention. Even if we were to adopt the district court's conclusions that the Canadian action is a parallel action and that Canada provides an adequate forum for RSA's claims against Century America, those conclusions do not support the district court's dismissal of the action.

■■■ The existence of a parallel action in an adequate foreign jurisdiction must be the beginning, not the end, of a district court's determination of whether abstention is appropriate. As we explained above, circumstances that routinely exist in connection with parallel litigation cannot reasonably be considered exceptional circumstances, and therefore the mere existence of an adequate parallel action, by itself, does not justify the dismissal of a case on grounds of international comity abstention. Rather, additional circumstances must be present—such as a foreign nation's interest in uniform bankruptcy proceedings—that outweigh the district court's general obligation to exercise its jurisdiction. The district court did not identify any such special circumstances.

■ Finally, both parties address the question of whether, as an alternative to dismissing the action, the district court should have considered staying proceedings in deference to the Canadian litigation. Because the propriety of a temporary stay was not raised in the district court, we do not decide whether the entry of such a stay would have been appropriate.[2] However, on remand the district court may consider the propriety of a stay based on the pending Canadian action.

■ In the context of abstention in deference to parallel state-court litigation, the Supreme Court has cautioned that "a stay is as much a refusal to exercise federal jurisdiction as a dismissal," because the decision to grant a stay "necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case." *Moses H. Cone*, 460 U.S. at 28, 103 S.Ct. 927. However, a measured temporary stay need not result in a complete forfeiture of jurisdiction. As a lesser intrusion on the principle of obligatory jurisdiction, which might permit the district court a window to determine whether the foreign action will in fact offer an efficient vehicle for fairly resolving all the rights of the parties, such a stay is an alternative that normally should be considered before a comity-based dismissal is entertained.

For example, in *Pravin Banker Associates, Ltd. v. Banco Popular Del Peru* we approved of the district court's measured response to the existence of parallel proceedings in Peru. 109 F.3d 850 (2d Cir. 1997). Initially, the district court granted a six-month stay to allow for "the orderly completion of [one defendant's] Peruvian liquidation proceedings." *Id.* at 853. However, at the conclusion of the stay and an additional two-month stay granted by the district court a defendant moved for "an indefinite stay to allow [defendant] Peru to complete its efforts to renegotiate its foreign debt." *Id.* at 855. The district court denied the defendant's motion, and we agreed with the court's decision, because an indefinite stay would have prejudiced the interests of the United States. Similarly, other Courts of Appeals have expressed a preference for measured stays of proceedings, where appropriate, in deference to parallel foreign litigation, instead of the more drastic measure of dismissal. *See, e.g., Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1224 (11th Cir.1999) (holding that district court should have entered a stay instead of dismissal and noting that the Eleventh Circuit's jurisprudence "does not dictate that we should dismiss cases with respect to which foreign jurisdictions are conducting parallel proceedings"); *Turner Entm't Co.*, 25 F.3d at 1523 ("[A]t this stage of the litigation, the appropriate resolution is a stay rather than a dismissal of the American action."); *Ingersoll Milling Mach. Co.*, 833 F.2d at 686 ("Moreover, it is not insignificant—indeed, it is very significant—that the district court's action in this case was a decidedly measured one. The court did not dismiss the action; it simply stayed further proceedings....").

Accordingly, on remand the district court may consider whether its obligation

---

**2.** RSA argues that the district court must have considered whether to stay the proceedings because the Court recognized its power to either dismiss or stay the action. However, the district court's only references to a stay were made in passing and in connection with statements of legal authority. *See Royal & Sun Alliance Ins. Co.*, 2005 WL 2087870, at

*2 (noting that courts have the inherent power to "stay or dismiss an action" and that the Supreme Court has not articulated a standard for determining whether to "stay or dismiss an action"). As the district court recognized, *see id.*, Century America's motion sought only dismissal, not dismissal or a stay. See Joint Appx. at 4.

to exercise jurisdiction over this action could be satisfied despite the entry of a brief stay to allow the Canadian court to determine if, for example, Century Canada is liable for the money RSA claims to be owed under the policies. We do not now decide that such a stay would necessarily be appropriate, or that other bases for a temporary stay would not be proper. Those questions are left to the district court in the first instance.

## CONCLUSION

The factors relied upon by the district court in granting Appellee's motion to dismiss are not sufficient to overcome the virtually unflagging obligation of a district court to exercise the jurisdiction conferred on it by Congress. The record contains no evidence of any exceptional circumstances that would justify abstention from jurisdiction. Accordingly, we hold that the district court abused its discretion by dismissing the action.

The judgment of the district court is vacated and remanded for further proceedings.