**C.D.S., INC., Plaintiff,**

v.

**Bradley ZETLER, CDS, LLC, Rapid Systems CC, and John Does 1-5, Defendants,**

and

**Amazon Web Services, Inc.**

**16 Civ. 3199 (VM)**

United States District Court, S.D. New York.

Signed August 3, 2016

326

Jeremy Evan Deutsch, Alfred N. Metz, Deutsch, Metz & Deutsch, LLP, Ami Bhatt, Winston & Strawn LLP, New York, NY, Christian Vincent Cangiano, Norris, McLaughlin & Marcus, P.A., New York, NY, for Plaintiff.

Ihsan Dogramaci, The Law Office of Ihsan Dogramaci, New York, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, United States District Judge.

Plaintiff C.D.S., Inc. ("C.D.S.") commenced this action against defendants Bradley Zetler ("Zetler"), CDS, LLC, and Rapid Systems CC (collectively with Zetler and CDS, LLC, "Rapid Systems") alleging in its complaint various violations of state and federal law. ("Complaint," Dkt. No. 1.) C.D.S. simultaneously moved for preliminary injunctive relief, and after a hearing ("Preliminary Injunction Hearing") the

Court granted a preliminary injunction to C.D.S. by Order dated June 6, 2016.[1] ("Preliminary Injunction Order", Dkt. No. 39.) C.D.S. and Rapid Systems subsequently exchanged letters concerning contemplated pre-answer motions. ("Pre-Motion Letters," Dkt. Nos. 68–69, 72–75.)

The Court construes Rapid Systems' Pre-Motion Letters as a motion to (1) stay this action pending resolution of Rapid Systems' related breach of contract claim being adjudicated in France; or, in the alternative, (2) dismiss the action pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure ("Rule 12(b)(7)") for failure to join necessary parties under Rule 19 of the Federal Rules of Civil Procedure ("Rule 19"); (3) dismiss the action for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"); and (4) require a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure ("Rule 12(e)") (collectively, "Rapid Systems' Motion," Dkt. No. 75.)

The Court additionally construes the correspondence in C.D.S.'s Pre-Motion Letters as a motion by C.D.S. for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56") on the first cause of action in its Complaint, seeking a declaratory judgment pursuant to 28 U.S.C. Section 2201 that C.D.S. is the sole owner of the copyright in the Agencypad software application ("Agencypad"). ("C.D.S.'s Motion," Dkt. No. 73.)

For the reasons set forth below, Rapid Systems' Motion is DENIED in its entirety, and C.D.S.'s Motion is also DENIED.

## I. BACKGROUND

C.D.S. filed its Complaint against (1) Zetler, the former president of C.D.S., (2) CDS, LLC, a limited liability company owned by Zetler, and (3) Rapid Systems CC, a South African company owned by Zetler, as well as nominal defendants Amazon Web Services, Inc. ("Amazon") and Rackspace US, Inc. ("Rackspace").[2] The Complaint alleges breach of fiduciary duty, unjust enrichment, misappropriation of trade secrets, violations of the Computer Fraud and Abuse Act, 18 U.S.C. Section 1030 ("CFAA"), the Copyright Act, 17 U.S.C. Section 101, and the Lanham Act, 15 U.S.C. Section 1501. (Dkt. No. 1.) C.D.S. seeks declaratory judgments determining that Rapid Systems' copyright and trademark registrations for C.D.S.'s software are void, and that C.D.S. is the owner of certain accounts hosted on Amazon and Rackspace. (Id.)

In short, the Complaint alleges that Rapid Systems wrongfully registered a copyright and trademark for the Agencypad software and mark, despite C.D.S.'s status as the legal owner of the copyright and trademark in Agencypad. The Complaint further alleges that during Zetler's tenure as president of C.D.S. he used C.D.S.'s funds, corporate records, and accounts to benefit himself and his own company, Rapid Systems. Zetler's actions allegedly included entering into a contract with Amazon for web hosting and with Rackspace for email hosting under the name of CDS, LLC, a company that he wholly owned, rather than on behalf of C.D.S. These actions prevented C.D.S. from accessing its email and electronic information or servicing clients after Zetler

---

1. The Preliminary Injunction Order required Rapid Systems to provide C.D.S. with access to accounts and tools necessary for C.D.S. to operate its business of providing software products to talent and booking agencies in the fashion industry. (See Dkt. No. 39.)

2. C.D.S. and Rackspace stipulated to, and this Court so ordered, voluntary dismissal of the action against nominal defendant Rackspace on July 11, 2016. (Dkt. No. 70.)

was terminated as president. Finally, C.D.S. alleges that Zetler wrongfully retained control over employee passwords and confidential business communications stored in the Amazon and Rackspace accounts, in violation of the CFAA and state law.

## A. RAPID SYSTEMS' MOTION

By letter dated June 21, 2016 ("June 21 Letter," Dkt. No. 75), Rapid Systems requests: (1) a stay of the instant action—either on forum non conveniens grounds or as an exercise of the Court's inherent power to abstain from exercising jurisdiction—pending disposition of an action in France ("French Action") for breach of contract brought by Rapid Systems against C.D.S. and its French counterpart, CDS SARL; (2) in the alternative, dismissal of the action pursuant to Rule 12(b)(7) for failure to join CDS SARL and Jerome Marechaux ("Marechaux") as necessary parties under Rule 19; or (3) dismissal of the action for failure to state claims under the CFAA and misappropriation of trade secrets pursuant to Rule 12(b)(6). Rapid Systems also moves for a more definite statement pursuant to Rule 12(e) on the grounds that C.D.S.'s requests for a declaratory judgment of ownership of the Amazon and Rackspace accounts are ambiguous. As a threshold matter, Rapid Systems requests that the Court address its request for a stay pursuant to a forum selection clause in the 2001 Exclusive Distributorship Agreement ("2001 Agreement") prior to addressing any other issues raised in the Pre-Motion Letters.

C.D.S. opposed Rapid Systems' Motion by letter dated July 6, 2016. ("July 6 Letter," Dkt. No. 68.) C.D.S. argues that: (1) no stay is warranted because the intellectual property claims before this Court exist outside of the 2001 Agreement that Rapid Systems seeks to enforce in the French Action, and therefore the outcome of the French Action is irrelevant to the proceedings in this case; (2) CDS SARL and Marechaux are not subject to service of process in this action and cannot be added on the basis of hypothetical future claims; and (3) C.D.S.'s CFAA claim and misappropriation of trade secrets claim are properly pled.

Rapid Systems replied by letter dated July 11, 2016. ("July 11 Letter," Dkt. No. 69.) Rapid Systems maintains that: (1) by challenging Rapid Systems' ownership of the Portfoliopad system ("Portfoliopad") in this Court, C.D.S. breached the 2001 Agreement governed by French law, and accordingly the Court should stay the instant action pending resolution of the French Action; (2) CDS SARL and Marechaux are subject to service of process and Zetler will be exposed to inconsistencies if CDS SARL and Marechaux are not joined; and (3) the allegations pursuant to the CFAA are still not properly pled and further specificity is required with respect to C.D.S.'s requested declaratory judgment over the Amazon and Rackspace accounts.

## B. C.D.S.'S MOTION

By letter dated July 8, 2016 ("July 8 Letter," Dkt. No. 73), C.D.S. asked Rapid Systems to agree to stipulate that C.D.S. owns the copyright to Agencypad. C.D.S. argues that the testimony in the Preliminary Injunction Hearing demonstrates that there is no genuine dispute over whether under 17 U.S.C. Section 201(b) Agencypad is a work for hire by C.D.S. employees, and therefore whether C.D.S. maintains rightful copyright ownership of Agencypad.

By letter dated July 12, 2016 ("July 12 Letter," Dkt. No. 74), Rapid Systems declined to stipulate to C.D.S.'s copyright ownership of Agencypad. Rapid Systems contends that the parties have not engaged in sufficient discovery to warrant summary judgment at this stage.

In a letter to the Court dated July 14, 2016 ("July 14 Letter," Dkt. No. 72), C.D.S. requested: (1) the Court set a briefing schedule for the issues set forth in the Pre-Motion Letters; (2) the Court schedule a conference with counsel to select a trial date; and (3) the Court grant C.D.S. leave to move for summary judgment on Count One of the Complaint, declaring C.D.S. the owner of Agencypad.

## II. RAPID SYSTEMS' MOTION

### A. REQUEST FOR A STAY

#### 1. Legal Standard

■ This Court has the authority to "dismiss or stay an action based on the pendency of a related proceeding in a foreign jurisdiction." Tarazi v. Truehope Inc., 958 F.Supp.2d 428, 432–33 (S.D.N.Y.2013). The United States Supreme Court has stated that a "decision to abstain from exercising jurisdiction based on the existence of parallel litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors … as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); see also Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 818–19, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) ("[N]o one factor is necessarily determinative" of whether to abstain and the court generally has an "obligation to exercise jurisdiction."); Royal and Sun Alliance Ins. Co. of Canada v. Century Intern. Arms, Inc., 466 F.3d 88, 93–94 (2d Cir. 2006).

■ Rapid Systems moves to stay this case pending resolution of the French Action. When deciding whether to stay a case in deference to a foreign proceeding, district courts should be guided by "proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency." Royal and Sun Alliance, 466 F.3d at 94; see also United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc., 216 F.Supp.2d 198, 212 (S.D.N.Y.2002).

The Second Circuit in Royal and Sun Alliance instructed courts to use a non-exhaustive list of factors when contemplating a stay in favor of a foreign proceeding, including: (1) the similarity of the issues; (2) the order in which the actions were filed; (3) the adequacy of the alternate forum; (4) the potential prejudice to either party; (5) the convenience of the parties; (6) the connection between the litigation and the United States; and (7) the connection between the litigation and the foreign jurisdiction. 466 F.3d at 94.

The Court now turns to the application of the Royal and Sun Alliance factors.

#### 2. Application

##### a. Similarity of the Issues

■ As a threshold matter, the Court must first determine whether the proceedings are parallel proceedings in which "substantially the same parties are litigating substantially the same issues simultaneously in two fora." Tarazi, 958 F.Supp.2d at 433. For two actions to be parallel, "the parties in the actions need not be the same, but they must be substantially the same, litigating substantially the same issues in both actions." Royal and Sun Alliance, 466 F.3d at 94 (citing Dittmer v. County of Suffolk, 146 F.3d 113, 118 (2d Cir.1998)).

The French Action is a breach of contract suit brought by Rapid Systems against CDS SARL and C.D.S. for allegedly challenging the ownership of Portfoliopad in violation of the 2001 Agreement. The cause of action alleged by Rapid Systems in the French Action is distinct from any cause of action alleged by C.D.S. in the instant action. If the French court

rules in favor of Rapid Systems in the French Action, it is not apparent that the action before this Court would be wholly, or even partly, resolved. The only legal issue which might be decided is ownership of the intellectual property rights of the Portfoliopad System, which is not directly at issue in this action. Further, even if the French court rules in favor of C.D.S. and CDS SARL, C.D.S.'s claims in this Court regarding Rapid Systems' violations of the CFAA and trade secret misappropriation and its request for declaratory judgment of ownership of the Rackspace and Amazon accounts will not be affected. As C.D.S. points out, even if Rapid Systems asserts the 2001 Agreement as a defense to C.D.S.'s claims of ownership over Agencypad, the allegations in the Complaint exist outside of the 2001 Agreement. (Dkt. No. 68.)

■ In short, despite the overlap in parties in the two actions, the outcome of the French Action will not affect adjudication of the central issues in dispute in this matter and the issues that would remain to be litigated are not "substantially the same." Royal and Sun Alliance, 466 F.3d at 94. Therefore, the actions are not parallel proceedings and a stay is not warranted based on this factor. An analysis of the remaining Royal and Sun Alliance factors confirms that no "exceptional" circumstances exist that would compel a stay in favor of the French Action. 466 F.3d at 94.

b. Order of Filing

■ It is well-established that courts "traditionally accord[ ] great weight to the first suit filed." Tarazi, 958 F.Supp.2d at 436 (quoting United Bank for Africa PLC v. Coker, No. 94 Civ. 0655, 2003 WL 22741575, at *3 (S.D.N.Y. Nov. 18, 2003)); see Royal and Sun Alliance, 466 F.3d at 94.

However, the importance of this factor is lessened if the first-filed action has not "reached a more advanced stage" than the later action. Tarazi, 958 F.Supp.2d at 436.

■ This action was filed prior to the filing of the French Action.[3] On that basis alone, this factor weighs against granting a stay. Although Rapid Systems has not yet filed an answer, the parties have already amassed evidence and depositions in preparation for the Preliminary Injunction Hearing, presented two days of testimony in that hearing, agreed to the appointment of a Special Master for purposes of implementing the Preliminary Injunction Order, and consulted with the Special Master numerous times, and held numerous conferences with the designated Magistrate Judge, as well as with this Court. The investment of time and resources that the parties, the Court, and the Special Master have dedicated to this action supports the weight given continuing litigation of this case as the first-filed action. Accordingly, this factor counsels strongly against a stay.

c. Adequacy of the Alternate Forum

■■ An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute. Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 75 (2d Cir.2003). The forum selection clause in the 2001 Agreement mandates a French forum and French law for breach of contract claims. For claims arising out of the 2001 Agreement, CDS SARL and C.D.S. expressly consented to litigate in France. The French forum is clearly adequate to adjudicate the breach of contract dispute as CDS SARL and C.D.S. agreed to be subject to French service of process. Accordingly, this factor

---

**3.** It is unclear from the Pre-Motion Letters what stage the French Action has reached, or if it has even been formally commenced. (See June 21 Letter, Dkt. No. 75 at 2) ("Rapid Systems is preparing to enforce the agreement in France.")

is neutral as to a stay pending resolution of the breach of contract claim only.

The existence of the forum selection clause in the 2001 Agreement, however, does not determine whether the French forum is adequate to address C.D.S.'s federal and state law claims. A key issue in this action is the validity of a United States copyright and trademark registration under United States law; as discussed in Section II(A)(2)(a), supra, C.D.S.'s claims before this Court regarding that issue are not grounded on any breach of the 2001 Agreement and are wholly distinct from the claims in the French Action. Therefore, even if C.D.S. is amenable to process in France based on the 2001 Agreement, the French court may lack a basis on which to decide the validity of United States copyright and trademark claims in considering the breach of contract claims in the French Action.

d. Potential Prejudice

 The "burden of litigating simultaneously in two forums is not sufficient prejudice to weigh in favor of stay." Tarazi, 958 F.Supp.2d at 438 (citing Kitaru Innovations Inc. v. Chandaria, 698 F.Supp.2d 386, 391 (S.D.N.Y.2010)). Because the issues to be litigated in the French Action are not substantially the same, neither party would be prejudiced by the denial of a stay. If the stay were granted, however, it is possible that C.D.S. would suffer prejudice in the form of lost time and further damage to its business. Therefore, the potential prejudice to C.D.S. counsels against a stay of this action.

e. Convenience of the Parties

 Rapid Systems urges the Court to stay this action on the ground of forum non conveniens. Although the circumstances to be considered when analyzing convenience in the context of a stay and when analyzing forum non conveniens are

similar, the two doctrines are distinct. The Supreme Court in Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 723, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996), substantively contrasted the doctrines.

[T]raditional considerations for forum non conveniens differ markedly from those informing the decision to abstain.... Federal courts abstain out of deference to the paramount interests of another sovereign, and the concern is with principles of comity and federalism.... [F]orum non conveniens, by contrast, has historically reflected a far broader range of considerations, [ ] most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality.

517 U.S. at 722–23, 116 S.Ct. 1712 (internal citations omitted) (emphasis added). The Court will examine each in turn.

The Quackenbush Court found that the practical difficulties courts must examine in considering forum non conveniens include, but are not limited to, assessing "evidentiary problems, unavailability of witnesses, and difficulty of coordinating multiple suits." Quackenbush, 517 U.S. 706, 723, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257–59, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).

 Rapid Systems has not shown that there are overlapping evidentiary issues in the French Action and this action. The type of evidence typically required to substantiate the breach of contract claims in the French Action will likely be quite different from the evidence required to prove violations of the CFAA, trade secrets misappropriation, breach of fiduciary duty, and other claims in this action. To establish breach of contract, the parties will likely offer testimony regarding the validity of the 2001 Agreement, the investiga-

tion of the breach, and any resulting damages. For claims brought pursuant to C.D.S.'s Complaint, the parties will likely offer evidence pertaining to Zetler's terms of employment, unauthorized access to the Agencypad code and transmission of proprietary company information. Tangible evidence required for these claims overlaps only in a minor degree.

It is possible that the testimony of party witnesses, such as Marechaux or Zetler, would be required in both actions. Rapid Systems does not argue, however, that material witnesses would be indefinitely unavailable if the two actions proceed concurrently. Finally, the Court is not persuaded that it would be unduly burdensome for the parties and their various legal representatives to manage these two distinct lawsuits simultaneously.

 Having determined that the Court will not dismiss the action on the basis of forum non conveniens, the Court will weigh considerations of convenience as they apply to the doctrine of abstention. See Quackenbush, 517 U.S. at 722–23, 116 S.Ct. 1712. To release this Court from its obligation to exercise jurisdiction over and timely adjudicate C.D.S.'s claims, a foreign forum must have an overriding interest in the suit to allow for deference to the foreign sovereign. Quackenbush, 517 U.S. at 723, 116 S.Ct. 1712. Following this line of reasoning, the court in Tarazi concluded that "deference to the plaintiffs' choice of forum must be weighed in light of the fact that [the plaintiff] filed its action in its forum of choice prior to the filing of this case." 958 F.Supp.2d at 437. In that case, however, the defendant filed a foreign action prior to the plaintiff's filing in a United States court. Here, C.D.S. filed its action first in the United States forum. Even if the requirements for dismissal on the basis of forum non conveniens were met, which they are not, the Court is persuaded that Rapid Systems has failed to show that

the French forum requires deference under the circumstances of this case. This conclusion is particularly compelled because the French court would be deciding issues of copyright and violations of United States federal and state law between companies and individuals that conduct business primarily with and within the United States. As the French forum is not more convenient under either the doctrine of forum non conveniens or abstention, this factor counsels against staying the action.

### f. The Litigation's Connection to the United States

 The Supreme Court cautions that granting a stay "necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case." Moses H. Cone, 460 U.S. at 28, 103 S.Ct. 927. Although granting a temporary stay is not "a complete forfeiture of jurisdiction," the Second Circuit makes it abundantly clear that "an indefinite stay" based on the outcome of foreign litigation "prejudice[s] the interests of the United States." Royal and Sun Alliance, 466 F.3d at 96.

 There is a substantial connection between C.D.S.'s claims and the United States. All parties are either incorporated or conduct business with and within the United States, and C.D.S. has asserted various claims pursuant to specific federal statutes. (Complaint, Dkt. No. 1.) Moreover, at the Preliminary Injunction Hearing, C.D.S. sufficiently demonstrated to this Court that it was enduring irreparable harm because of the alleged activities of Rapid Systems. (See "Preliminary Injunction Order", Dkt. No. 39.) The commencement date of trial for the French Action could potentially be delayed indefinitely, thereby releasing Rapid Systems from the obligation to answer the allegations against it in this Court. A stay has the

significant potential to become indefinite, and an indefinite stay would clearly prejudice the interests of the United States in this action. The strong connection between this litigation and the United States weighs against a stay.

### g. Connection between the Litigation and France

■ A strong connection between the litigation and the foreign forum is one of the "exceptional circumstances" that must exist to "outweigh the district court's general obligation to exercise its jurisdiction." Tarazi, 958 F.Supp.2d at 436 (quoting Royal and Sun Alliance, 466 F.3d at 95). In Tarazi, the Court found that a stay was justified when the litigation had a strong connection to a foreign forum based on a licensing agreement, negotiated in, and executed in, and governed by the laws of the foreign jurisdiction. 958 F.Supp.2d at 436.

■ The issues and parties in this action are not sufficiently connected to France. The parties to this action—C.D.S., Rapid Systems CC, and CDS, LLC—are not French companies, nor is Zetler a French citizen. As noted above, C.D.S.'s claims are not governed by French law. There is not a satisfactory connection between the litigation before this Court and France, and this factor weighs against granting a stay.

Upon review of the totality of the circumstances in this case, the Court is not persuaded that exceptional circumstances exist in favor of staying the action or dismissing the case on forum non conveniens grounds. The balance of factors discussed above weigh strongly against staying the action pending resolution of the French Action. Accordingly, Rapid Systems' request to stay is DENIED.

### B. DISMISSAL UNDER RULE 12(b)

#### 1. Rule 12(b)(7)

Rapid Systems contends that CDS SARL and Marechaux must be joined in order to accord adequate relief among the parties. Under Rule 12(b)(7), courts are required to dismiss an action for failure to join a necessary party under Rule 19 Fed. R. Civ. P. 12(b)(7); see Federal Ins. Co. v. SafeNet, Inc., 758 F.Supp.2d 251, 257 (S.D.N.Y.2010). Courts considering a Rule 12(b)(7) motion must look to Rule 19, which sets forth a "two-part test for determining whether the court must dismiss an action for failure to join an indispensable party." Federal Ins. Co., 758 F.Supp.2d at 257 (citing Viacom Int'l, Inc. v. Kearney, 212 F.3d 721, 724 (2d Cir.2000)).

■ First, Rapid Systems must establish that CDS SARL and Marechaux are required parties under Rule 19(a). Id. Second, if the Court determines that CDS SARL and Marechaux are indeed required parties, but "cannot be joined for jurisdictional or other reasons, the court must [then] determine if the absentee is indispensable under Rule 19(b)." Federal Ins. Co., 758 F.Supp.2d at 257 (citing Viacom Int'l, Inc. v. Kearney, 212 F.3d 721, 725 (2d Cir.2000)). If Rule 19(a) and (b) are both satisfied, then the action should be dismissed.

There are three components of Rule 19(a)(1) that courts assess to determine whether a non-party is required. See Fed. R. Civ. P. 19(a)(1); see also Federal Ins. Co., 758 F.Supp.2d at 257. The first component asks whether the court can afford complete relief in the absence of the non-party. See Fed. R. Civ. P. 19(a)(1)(A). The second component focuses on whether the non-party's absence will impair or impede its ability to protect its interests. See Fed. R. Civ. P. 19(a)(1)(B)(i). The third component asks whether the existing parties

would be subject to "double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19 (a)(1)(B)(ii). If any of the three components are satisfied, the absentee party constitutes a required party. See Federal Ins. Co., 758 F.Supp.2d at 257.

Each of the three components examines the effects of non-joinder on different parties. In examining each component the Court must properly identify which party's interests are at stake. The first component "focuses on the existing parties to the lawsuit only." Federal Ins. Co., 758 F.Supp.2d at 257 (emphasis added) (citing MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 385 (2d Cir. 2006)). The second component examines the effects on the non-party. Federal Ins. Co., 758 F.Supp.2d at 257–58 (citing MasterCard, 471 F.3d 377, 386–87 (2d Cir. 2006)). Additionally, it is not enough for absentee parties to have an interest in the litigation, even if the absentee parties would be adversely affected by the outcome of the litigation. See MasterCard, 471 F.3d at 386–87 ("[N]ecessary parties under [the second component] are only those parties whose ability to protect their interests would be impaired because of that party's absence from the litigation.") (emphasis in original). The court in Federal Ins. Co. explained the third component:

> The touchstone is not inconsistent adjudications or results.... Rather, inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident.... Moreover, it is critical that the inconsistent obligations be caused by the non-party's absence.

758 F.Supp.2d at 258 (internal citations omitted).

Applying the first component here, this Court finds that it can grant adequate relief to C.D.S. without joining CDS SARL and Marechaux. No evidence has been presented establishing that CDS SARL has a claim for damages that is overlapping with this suit or claims an ownership interest in Agencypad. CDS SARL is not entitled to relief in this action, and accordingly, its joinder is not required for the Court to accord complete relief among the parties. Likewise, while Marechaux is a majority shareholder of C.D.S., he is not an officer or employee. C.D.S. alleges that it, and it alone, suffered damages. Any damages potentially suffered by Marechaux because of his shares in C.D.S. merely derive from damages directly sustained by C.D.S. If the Court were to consider Marechaux a required party simply because he may have been financially harmed as a shareholder, it would necessitate that each individual shareholder of C.D.S. be added as a required party. Adding Marechaux on the basis of his shareholder status is not practical nor required. Moreover, any concerns Rapid Systems may have about potential overlapping claims brought against it by Marechaux may be addressed by an appropriate stipulation between the parties confirming the representation C.D.S. has made to the Court in this proceeding, namely that C.D.S. alone has suffered damages from the claims it has brought in this action, thus presumptively barring any claims by Marechaux arising from the same underlying events and transactions. Accordingly, the first component of Rule 19(a) is not satisfied.

Turning to the second component of Rule 19(a), the claims in this action do not present the faintest suggestion that the absence of CDS SARL or Marechaux would impede those non-parties' ability to protect their own interests. See Mastercard, 471 F.3d at 387 ("[N]ecessary parties under Rule 19(a)(2)(i) are only those parties whose ability to protect their interests would be impaired because of that party's absence from the litigation.") (emphasis in

original). Neither entity claims that their interests in the ownership of Agencypad or any other contested issue are impaired because they are not parties to this action. Consequently, the second component of Rule 19(a) is not satisfied.

Rapid Systems principally relies on its argument that the third component of Rule 19(a) is met. It contends that if CDS SARL and Marechaux are not joined in this action, Zetler, as the minority shareholder of C.D.S., will be exposed to inconsistent obligations. This argument is based upon hypothetical future litigation of collateral claims between C.D.S., CDS SARL, Zetler, and Marechaux regarding potential obligations of C.D.S. to CDS SARL at some later unspecified date. This posited litigation would supposedly arise only if the outcome of the instant action is entirely favorable to Rapid Systems. (See Dkt. Nos. 69, 75.) Since Rapid Systems has failed to identify any concrete risk of inconsistent obligations it may encounter in relation to this action, this Court finds that the third component of Rule 19(a) is not satisfied.

No analysis pertaining to Rule 19(b) is necessary because the Court has determined that CDS SARL and Marechaux are not "required" parties under Rule 19(a). Accordingly, the Court will not dismiss the action under Rule 12(b)(7), and the motion is DENIED on that basis.

2. Rule 12(b)(6)

■■ Under Rule 12(b)(6), a complaint should be dismissed if the plaintiff has not offered sufficient factual allegations that render the claims it asserts facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The task of the court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F.Supp.2d 566, 574 (S.D.N.Y. 2005). The court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir.2002).

The Court notes that, in ruling in C.D.S.'s favor in the Preliminary Injunction Order, it found that C.D.S. had demonstrated a likelihood of success on the merits in the case sufficient to support a preliminary injunction. See C.D.S., Inc. v. Bradley Zetler, CDS, LLC, 16 Civ. 3199, 190 F.Supp.3d 375, 2016 WL 3275173 (S.D.N.Y. June 6, 2016).

■■ In its June 21 Letter, Rapid Systems maintains that C.D.S. failed to state facts that plausibly allege a CFAA claim or a misappropriation of trade secrets claim. An actionable violation of the CFAA occurs when there is evidence of unauthorized use of a protected computer (i.e., a computer used for interstate commerce and communication) to transmit or otherwise access proprietary and confidential information. See 18 U.S.C. Section 1030 et seq. The statute also requires an allegation claiming at least $5,000 in damages as a result of such unauthorized conduct. See id. Rapid Systems argues that Zetler's access to a "computer that houses Portfoliopad has [n]ever been 'without authorization' ", thereby precluding any claim under the CFAA. (Dkt. No. 69.) However, C.D.S.'s Complaint, which the Court must take as true at this stage, alleges that Zetler accessed and transmitted information from a computer housing Agencypad

after his termination. (See Complaint ¶ 112, Dkt. No. 1.) Rapid Systems' response that Zetler had legal access to a computer housing Portfoliopad is therefore not responsive to the allegations in C.D.S.'s Complaint, which make out a claim that Zetler, without authorization, accessed the proprietary Agencypad source code, as well as client and vendor data, without authorization after he was terminated as President of C.D.S. (Complaint ¶ 112, Dkt. No. 1.)

Upon review of the Complaint, the Court is persuaded that C.D.S. has plausibly alleged claims under the CFAA. First, C.D.S. sufficiently alleges that Zetler was without or exceeded his authority when he accessed a computer to transmit passwords providing access to Agencypad source code after his termination. Second, C.D.S. seeks to recover $5,000 in accordance with requisite minimum statutory damages. For these reasons, the Court finds that the CFAA claim sufficiently meets the statutory pleading requirements.

■■■ Rapid Systems also argues that C.D.S. fails to adequately plead trade secret misappropriation under New York law. "To succeed on a claim for the misappropriation of trade secrets under New York law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." North Atlantic Instruments, Inc. v. Haber, 188 F.3d 38, 43–44 (2d Cir.1999) (citing Hudson Hotels Corp. v. Choice Hotels Int'l, 995 F.2d 1173, 1176 (2d Cir.1993)); see also Integrated Cash Management Servs., Inc. v. Digital Transactions, Inc., 920 F.2d 171, 173 (2d Cir.1990).[4]

■■■ C.D.S. satisfies the first pleading requirement of trade secret misappropriation by alleging facts making out a claim that the databases storing customer lists and proprietary source code of Agencypad constitute trade secrets. (See Complaint ¶¶ 134-39, Dkt. No. 1.) As to the second pleading requirement, C.D.S. alleges that Zetler knowingly used the Agencypad source code in violation of his confidential relationship with C.D.S. after his termination. See North Atlantic Instruments, Inc., 188 F.3d at 49 (finding that a former employee has a "duty under New York law not to use his former employer's trade secrets against the employer"). C.D.S. alleges several different actions undertaken by Rapid Systems that plausibly plead misappropriation of trade secrets, including Rapid Systems' attempts to register Agencypad's proprietary source code as its own intellectual property with the United States Copyright Office and the United States Patent and Trademark Office, as well as falsely claiming ownership of C.D.S.'s website by registering it with the Internet Corporation for Assigned Names and Numbers. (See Complaint ¶ 140, Dkt. No. 1.) Accordingly, the Court will not dismiss the Complaint on the basis of failure to state a claim under Rule 12(b)(6).

3. Rule 12(e)

Under Rule 12(e), "[a] party may move for a more definite statement of a pleading

---

4. When determining whether information constitutes a trade secret, "New York courts consider: (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." North Atlantic Instruments, 188 F.3d at 44.

to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Such a motion "must point out the defects complained of and the details desired." Id.

 Rapid Systems argues that C.D.S.'s declaratory judgment claims as to ownership of the Rackspace and Amazon accounts lack specificity. Upon review of the Complaint and the testimony at the Preliminary Injunction Hearing, the Court is persuaded that C.D.S.'s pleading on this issue is clear. C.D.S. requests a declaratory judgment that C.D.S. owns the Amazon and Rackspace accounts paid for by "[C.D.S.'s] credit cards linked to [C.D.S.'s] corporate bank accounts." (Complaint ¶¶ 89, 100, Dkt. No. 1.) It is equally clear that C.D.S.'s declaratory judgment request pertains to the same access codes that this Court ordered Rapid Systems to share with C.D.S. in order to enable co-equal access. See C.D.S., Inc., 190 F.Supp.3d at 378, 2016 WL 3275173, at *3 (granting "preliminary injunctive relief in the form of co-equal access with [Rapid Systems] to the accounts and tools necessary for C.D.S. to maintain and operate its business during the pendency of this litigation").

At this stage of the proceedings, after lengthy correspondence between the parties and testimony provided at the Preliminary Injunction Hearing, the Court is persuaded that Rapid Systems is well aware of the basis of C.D.S.'s claims. The Court finds that C.D.S. need not amend its Complaint in order for Rapid Systems to file an answer.

### III. C.D.S.'S MOTION

#### A. LEGAL STANDARD

 Summary judgment is appropriate if the evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celo-

tex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the moving party is entitled to judgment as a matter of law, the court must "resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought." See Major League Baseball Properties, Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir.2008).

 Although the party opposing summary judgment may not "rely on mere conclusory allegations nor speculation," D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir.1998), if there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper. See Gummo v. Village of Depew, N.Y., 75 F.3d 98, 107 (2d Cir.1996). To ensure that the record is complete at the summary judgment stage, "the plain language of Rule 56 mandates the entry of summary judgment after adequate time for discovery[.]" Lujan v. National Wildlife Federation, 497 U.S. 871, 884, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (quoting Celotex, 477 U.S. at 322, 106 S.Ct. 2548).

#### B. APPLICATION

C.D.S. moves for summary judgment on its claim for declaratory judgment that it is the owner of the copyright for Agencypad. C.D.S. contends that its ownership of Agencypad's copyright was proven at the Preliminary Injunction Hearing, citing testimony at that hearing that Agencypad was developed by C.D.S.'s full-time employees. C.D.S. argues that the testimony sufficiently establishes that Agencypad is a work-for-hire pursuant to 17 U.S.C. Section 201(b) ("Section 201(b)"). Under Section 201(b):

> In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the

author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

17 U.S.C § 201(b).

C.D.S. argues that the testimony shows that Agencypad's lead software engineer and developer, Alex Gugnishev, was a full-time paid C.D.S. employee. In addition, C.D.S. argues that Zetler was an employee acting as president of C.D.S. with payment in the form of stock options. C.D.S. asserts that both individuals were acting in the scope of their employment with C.D.S. as the employer-for-hire during Agencypad's development, which satisfies Section 201(b). C.D.S. argues that no genuine dispute of material fact exists as to this claim, and that it is entitled to summary judgment as a matter of law.

Rapid Systems counters that the parties have not engaged in discovery so as to make a ruling on a summary judgment motion proper. Rapid Systems argues that the depositions in preparation for the Preliminary Injunction Hearing were on short notice and limited in scope and that further briefing and fact discovery are necessary before the Court can decide whether summary judgment is proper.

The Court is persuaded that the parties have not created an adequate evidentiary record on which the Court could base a summary judgment determination on this issue. The parties have not yet set a schedule for discovery, and material issues of fact pertaining to the copyright of Agencypad remain disputed. Full discovery and presentation of evidence at trial are required to decide C.D.S.'s claims. C.D.S.'s motion for summary judgment is premature and thus is DENIED.

## IV. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 75) of defendants Bradley Zetler, CDS, LLC, and Rapid Systems CC (collectively, "Rapid Systems") to stay or to dismiss plaintiff C.D.S., Inc.'s ("C.D.S.") complaint (Dkt. No. 1) is **DENIED**; and it is further

**ORDERED** that C.D.S.'s motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Dkt. No. 73) is **DENIED**; and it is further

**ORDERED** that counsel for C.D.S. and Rapid Systems, in good faith and without further delay, shall confer and select a date for trial to commence within 120 days from the date of this Order, and shall set a schedule for discovery in accordance with the agreed upon trial date.

**SO ORDERED.**