C.D.S., INC., Plaintiff,

v.

BRADLEY ZETLER, CDS, LLC, Rapid Systems CC, and John Does 1-5 Defendants,

and

Amazon Web Services, Inc. and Rackspace U.S., Inc.

16 Civ. 3199 (VM)

United States District Court, S.D. New York.

Signed June 6, 2016

Jeremy Evan Deutsch, Alfred N. Metz, Deutsch, Metz & Deutsch, LLP, Ami Bhatt, Winston & Strawn LLP, Christian Vincent Cangiano, Norris, McLaughlin & Marcus, P.A., New York, NY, for Plaintiff.

Ihsan Dogramaci, The Law Office of Ihsan Dogramaci, New York, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, United States District Judge

Plaintiff C.D.S, Inc. ("C.D.S.") commenced this action on April 29, 2016 against defendants Bradley Zetler, CDS LLC, and Rapid Systems CC (collectively "Rapid Systems") and simultaneously moved for a preliminary injunction order-

ing Rapid Systems to provide C.D.S. with access to a number of accounts and tools necessary for C.D.S. to operate its business of providing software products to talent and booking agencies in the fashion industry. C.D.S. alleges that Rapid Systems wrongfully terminated its access to these services. (Dkt. No. 1.) Rapid Systems opposed the preliminary injunction. (Dkt. No. 7.) After oral argument on C.D.S.'s application for temporary injunctive relief on May 6, 2016 (Dkt. Minute Entry for May 6, 2016) the Court held a preliminary injunction hearing on June 2 and June 3, 2016, at which it heard testimony and received evidence from the parties ("Preliminary Injunction Hearing"). For the reasons stated by the Court at the conclusion of the Preliminary Injunction Hearing and the reasons stated below, C.D.S.'s request for a preliminary injunction is GRANTED.

■ A party seeking a preliminary injunction must show: (1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor. Doninger v. Niehoff, 527 F.3d 41, 47 (2d Cir.2008).

■ Upon reviewing the parties' motion papers and memoranda of law, declarations submitted to the Court, and the evidence presented in the course of the Preliminary Injunction Hearing, the Court is persuaded that C.D.S. has made a sufficient showing that it is entitled to injunctive relief.

First, C.D.S. Inc. has presented persuasive evidence demonstrating that it will suffer irreparable harm in the absence of an injunction. The Court heard detailed testimony from Diane Treat, the current president of C.D.S., cataloguing the harm C.D.S. is experiencing and will continue to experience without access to the Amazon Web Hosting and Rackspace accounts, which C.D.S. alleges Rapid Systems has improperly denied it. (Hearing Tr. for June 2, 2016 at 175–180.) Specifically, Treat testified that C.D.S. products had received complaints from clients about bugs in the software that caused, for instance, misstated talent rates on statements and "credit note bugs". (Hearing Tr. for June 2, 2016 at 176 ¶8–16.) She also stated that customers have requested specific software improvements to meet their needs. Treat testified, however, that C.D.S. could not fix or make improvements to the software that would remedy the bugs or add the requested improvements because it lacked the necessary network administrator credentials. (Hearing Tr. for June 2, 2016 at 178 ¶ 1.)

Treat testified that due to the inability to fix or improve its software product, C.D.S. would suffer harm by inability to retain clients, damage to its reputation, and loss of business. According to Treat's testimony: "one of the worst parts of this industry is that your reputation is everything. The minute our clients start talking, our reputation becomes tarnished and it's a domino effect." (Hearing Tr. for June 2, 2016 at 178 ¶ 10–15). The Court finds that no adequate remedy at law exists to rectify the harm that C.D.S. has demonstrated it will suffer in the absence of an injunction, including the loss of business reputation, loss of customers, customer confusion, and C.D.S.'s inability to innovate and develop its product. See Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 404 (2d Cir.2004) ("irreparable harm may be found where damages are difficult to establish and measure"); Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 69 (2d Cir.1999) (observing that it is "very difficult to calculate monetary damages that would successfully re-

dress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come.").

Second, C.D.S. has shown that there are sufficiently serious questions on the merits of its claims in the underlying action. C.D.S. seeks a declaratory judgment recognizing C.D.S. as the owner of the copyright for the Agencypad software and trademark registration for the Agencypad mark, among other claims. Throughout the course of the Preliminary Injunction Hearing the Court heard testimony evidencing a sharp factual dispute about the chronology of the development of Agencypad, about the technical feasibility of using Agencypad software separately from the Portfoliopad software owned by Rapid Systems, and about the relative contributions of C.D.S. and Rapid System's software engineers to the creation of Agencypad. Alex Gugnishev, a software engineer at C.D.S., testified that he developed Agencypad as an employee of C.D.S. (Hearing Tr. for June 2, 2016 at 103 ¶ 20-23.) Gugnishev further testified that he created 90 percent of Agencypad. (Hearing Tr. for June 2, 2016 at 118 ¶16-19). Testifying for Rapid Systems, software developer Rob Nagel agreed that Gugnishev was "tasked with the project of creating Agencypad." (Hearing Tr. for June 2, 2016 at 230 ¶10-12.) C.D.S. additionally alleges breach of fiduciary duty, misappropriation of trade secrets, and conversion against Zetler. Sufficient evidence was presented to demonstrate serious questions and sharp factual disputes as to the merits of these claims, including a disagreement over the existence and purpose of an alleged agreement to shift expenses between C.D.S. and CDS, LLC.

C.D.S. has further shown that the balance of equities tips decidedly in its favor. It risks being forced out of business significantly or entirely without access to the accounts and tools from which it has been excluded by Rapid Systems. On the other hand, Rapid Systems presented no convincing evidence to demonstrate that it would suffer concrete harm should C.D.S. be granted co-equal access to the accounts and tools C.D.S. requested. Finally, C.D.S. has shown that the public interest is served by the granting coequal access to C.D.S. and Rapid Systems so that each entity may respond to and serve its own customers without prejudice to the other.

Having found that C.D.S. has established that (1) C.D.S. will suffer irreparable harm in the absence of injunctive relief, (2) there are serious questions going to the merits of the case, (3) the balance of equities tips decidedly in C.D.S.'s favor, and (4) the public interest favors the Court's issuing an injunction, the Court is persuaded that Rapid Systems must grant C.D.S. access on a co-equal basis with Rapid Systems to the accounts and tools necessary for C.D.S. to conduct business while this matter is pending.

The Court notes that C.D.S. submitted a proposal to the Court on May 18, 2016 which is tailored to allow shared access by both parties to the Amazon Web Services servers hosting the Agencypad application and Portfolio database on an equal basis without affecting the operation of either business. ("May 18 Proposal," Dkt. No. 38.) The May 18 Proposal also sets out a proposed 72 hour notification period for any changes by either party. The parties are instructed to use the May 18 Proposal as a framework for an operational agreement that will ensure shared access to the necessary accounts and servers for both C.D.S. and Rapid Systems to serve their respective clients, and to confer immediately to implement the Court's Order in a manner that is acceptable to both parties.

Rapid Systems has requested that the Court clarify that it is not in violation of

any Court Order by removing the name "CDS" or the C.D.S. mark from its own website. The Court stated on the record and again confirms herein that Rapid Systems is not required by Order of this Court to use or maintain the name or mark of "CDS" on its own website.

The Court also concluded following the Preliminary Injunction Hearing that appointment of a special master as provided for in Rule 53 of the Federal Rules of Civil Procedure. is appropriate in this case. A special master would serve on a fair and evenhanded basis to provide expert assistance in facilitating agreement on technical and operational issues, monitor compliance with the preliminary injunctive relief ordered by the Court and reflected in the parties' operational agreement, and to advise the court on the technical questions in dispute in this case. The parties shall confer and reach agreement on an individual to serve as such special master, and shall advise the Court of their proposed operational and special master agreement within seven (7) days of the date of this Order.

Accordingly, it is hereby

**ORDERED** that the request of plaintiff C.D.S. Inc. ("C.D.S.") for preliminary injunctive relief in the form of co-equal access with defendants Bradley Zetler, CDS, LLC, and Rapid Systems CC (collectively "Rapid Systems") to the accounts and tools necessary for C.D.S. to maintain and operate its business during the pendency of this litigation is **GRANTED**; and it is further

**ORDERED** that Rapid Systems is not required to use the name CDS or CDS, Inc. on its website or other manner; and it is further

**ORDERED** that C.D.S. and Rapid Systems shall meet and confer immediately and in good faith as to the technical and operational details of such shared access ("Shared Access Plan"); and it is further

**ORDERED** that any dispute as to the details of the Shared Access Plan shall be referred to Magistrate Judge James L. Cott; and it is further

**ORDERED** that C.D.S. and Rapid Systems shall confer regarding an individual they would propose the Court appoint to serve as a special master in this case; and it is finally

**ORDERED** that the parties inform the Court of their Shared Access Plan and special master agreement within seven (7) days of the date of this Order.

**SO ORDERED.**