C.D.S., INC., Plaintiff,

v.

Bradley ZETLER, et al. Defendants.

16 Civ. 3199 (VM)

United States District Court,
S.D. New York.

Signed 06/22/2017

Anna Sydney Park, Rosner, Nocera & Ragone, LLP, David Leichtman, David H. Brill, Richard A. Mescon, Shevani Jaisingh, Tatsuya Adachi, Leichtman Law PLLC, Jeremy Evan Deutsch, Deutsch, Metz & Deutsch, LLP, Siddartha Rao, Rao Law Group, Ami Bhatt, Norris Mclaughlin & Marcus, P.A., Andrew Parfomak, Alfred N. Metz, Christian Vincent Cangiano, New York, NY, Joseph J. Fleischman, Edward George Sponzilli, Robert Mahoney, Norris McLaughlin & Marcus, PA, Bridgewater, NJ, for Plaintiff.

Ihsan Dogramaci, Joshua Martin MacLeod, The Law Office of Ihsan Dogramaci, Lewis P. Trippett, Higgins & Trippett L.L.P., New York, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, United States District Judge.

Plaintiff C.D.S. Inc. ("C.D.S.") commenced this action against defendants Bradley Zetler ("Zetler"), CDS, LLC, and Rapid Systems CC (collectively with Zetler and CDS, LLC, "Rapid Systems") alleging in its complaint various violations of state and federal law. ("Complaint," Dkt. No. 1.) These claims arise out of the parties' disputes relating to the computer software services they provide to their clients in the fashion industry. Rapid Systems has asserted several direct and derivative claims against C.D.S.; its CEO, Diane Treat ("Treat"); three directors of C.D.S., Jerome Viollon ("Viollon"), Christelle Riot

("Riot"), and Christophe Racle ("Racle"); the majority shareholder of C.D.S., Jerome Marechaux ("Marechaux," together with Viollon, Riot, and Racle, the "Individual Counterclaim Defendants"); and against CDS SARL, a French company majority-owned by Marechaux that employs Viollon, Riot, and Racle (collectively, the "Counterclaim Defendants").

By letter dated June 19, 2017, C.D.S. requests an order directing Rapid Systems to (1) stop selling or attempting to sell Agencypad pending resolution of this matter; (2) permit addition of new users to existing C.D.S. customer contracts; and (3) permit renewals of existing contracts between C.D.S. and its customers for Agencypad bundled with Portfoliopad. ("June 19 Letter," Dkt. No. 328.) For the reasons discussed below, the Court is reserving judgment on the issue of Rapid Systems's sales of Agencypad. C.D.S.'s request is otherwise denied.

## I. BACKGROUND

On June 6, 2016, this Court granted C.D.S.'s motion for a preliminary injunction and ordered Rapid Systems to provide C.D.S. access to a number of accounts and software tools necessary for C.D.S. to continue operating its business of selling Agencypad, a software application, to talent and booking agencies in the fashion industry pending resolution of the instant dispute. See C.D.S., Inc. v. Zetler, 190 F.Supp.3d 375, 376 (S.D.N.Y. 2016) (the "Preliminary Injunction Order"). Rapid Systems appealed the Preliminary Injunction Order, and the Second Circuit affirmed. See C.D.S. Inc. v. Zetler et al., No. 16-2346, 691 Fed.Appx. 33, 35, 2017 WL 2347559, at *2 (2d Cir. May 31, 2017).

By letter dated May 8, 2017, Rapid Systems informed the Court that it had terminated an Exclusive Distributorship Agreement (the "EDA") under which C.D.S. had been selling Portfoliopad, another software application that, pursuant to the EDA, is property of Rapid Systems. (See "May 8 Letter," Dkt. No. 291.) The EDA, to which C.D.S., CDS SARL and Rapid Systems are parties, is governed by French law and contains a forum selection clause vesting exclusive jurisdiction for disputes under the EDA in the Paris Commercial Court. (See Dkt. No. 306-3 at 5; May 12, 2017 Transcript at 4:19-23, 7:9-12.) Several actions arising out of the EDA are currently pending in the Paris court, but no claim for breach of the EDA is before this Court. (See May 12, 2017 Transcript at 7:12-15.) C.D.S. subsequently informed the Court that Rapid Systems, in connection with its termination of the EDA, had "terminated [C.D.S.'s] co-equal access to several features [C.D.S.] required to administer customers' use of Agencypad that are subject to the [Preliminary Injunction Order]." ("May 10 Letter," Dkt. No. 293.)

Following letter correspondence and a hearing on the matter, the Court ordered the parties to consult with special Master Daniel Garrie (the "Special Master") regarding an appropriate procedure to return the parties to the status quo that existed prior to May 8, 2017. (See Dkt. Minute Entry dated May 12, 2017.) The Court directed the Special Master to submit a report to the Court "concerning what is necessary to restore the status quo and to what extent it can be done without in any way harming the rights that Rapid Systems has in this matter up to this point." (May 12, 2017 Transcript at 64:9-12.)

The Special Master issued a report, dated May 17, 2017, recommending, among other things, that the Court order the parties to implement a permanent solution devised by the Special Master to allow C.D.S. to again have "the ability to add and edit agencies and users of Agencypad"

without "restoring Portfoliopad functionality that was restricted by [Rapid Systems's] actions on May 8, 2017." ("May 17 Report," Dkt. No. 327, at 2.) On June 2, 2017, the Court, after receiving objections from the parties, adopted the Special Master's May 17 Report in relevant part. See C.D.S., Inc. v. Zetler, No. 16 CIV. 3199, 254 F.Supp.3d 625, 631–32, 634–35, 2017 WL 2537816, at *5, *8 (S.D.N.Y. June 2, 2017) ("June 2 Order").

By letter dated June 2, 2017, C.D.S. requests that the Court direct Rapid Systems "to stop interfering with C.D.S.'s relationships with its customers" and to permit C.D.S. to add new users for existing clients. ("June 2 Letter," Dkt. No. 311.) Rapid Systems responded on June 5, 2017, arguing that the dispute concerns the right of C.D.S. to add a new Portfoliopad user account for an existing C.D.S. Portfoliopad customer and that the dispute therefore must be brought in the Commercial Court of Paris. (See "June 5 Letter," Dkt. No. 314.)

By letter dated June 6, 2017, C.D.S. requests that the Court "require [Rapid Systems] to register all new users of Agencypad as requested by [C.D.S.], irrespective of whether the client contract includes Portfoliopad as a bundled product or not." ("June 6 Letter," Dkt. No. 320, at 2.) Rapid Systems responded the next day, arguing that it was complying with the June 2 Order by allowing C.D.S. to continue to sell Agencypad without providing access to the Portfoliopad application, which C.D.S. is prohibited from selling following termination of the EDA. (See "First RS June 7 Letter," Dkt. No. 319.)

By letter dated June 7, 2017, C.D.S. informed the Court of "yet another emergency situation." ("June 7 Letter," Dkt. No. 321.) C.D.S. contends that Rapid Systems threatened to "turn off the access of potentially hundreds of clients of Agency-

pad ...." (Id. at 1.) C.D.S. argues that its "Agencypad contracts include the right of the client to use Portfoliopad, so any interference with those contracts is an interference with an Agencypad contract." (Id. at 1 n.1.) Accordingly, C.D.S. argues, Rapid Systems's threat to turn off access to Portfoliopad is "a blatant violation of the preliminary injunction," and C.D.S. therefore requests enforcement of the Preliminary Injunction Order and sanctions against Rapid Systems and its counsel. (Id. at 1.)

In response, Rapid Systems reasserted its argument that it "has done what it needs to do so that C.D.S. Inc. can grant Agencypad customers access to Agencypad features while denying access to the Portfoliopad dashboard (because C.D.S. Inc.'s Portfoliopad license has terminated)." ("Second RS June 7 Letter," Dkt. No. 322, at 1.) Rapid Systems contends that C.D.S. needs to identify a contract evidencing that the C.D.S. customers at issue have the right to access Portfoliopad and that, if they do have that right, C.D.S. must pay commissions to Rapid Systems for those users, as required by the EDA. (Id. at 1–2.) Rapid Systems further argues that, if C.D.S.'s position is that it is not required under the EDA to point to any contracts providing for the rights it now claims, or to pay any commissions, the parties' dispute over such a demand "belongs in the Commercial Court of Paris," not in this Court. (Id.)

C.D.S.'s June 19 Letter requests that the Court take action regarding "several purely legal issues" left unresolved by the Court's June 2 Order and the Special Master's recent reports and recommendations. (See Dkt. No. 328) Specifically, C.D.S. argues that although the Court's June 2 Order, "permits ... [C.D.S.] to add new users of Agencypad who do not also have Portfoliopad ... it does not solve the other three legal problems with defendants' ac-

tions." (Id. at 1.) First, C.D.S. contends that Rapid Systems has sold or tried to sell Agencypad to current or former C.D.S. customers and requests that the Court direct Rapid Systems to cease all such sales efforts. (See id. at 1–2.) Second, C.D.S. again requests that the Court order Rapid Systems to allow the addition of new users for customers who have contracts with C.D.S. for both Agencypad and Portfoliopad. (See id. at 2–3.) Third, C.D.S. requests that the Court order Rapid Systems to allow continued service for customers whose contracts for Agencypad bundled with Portfoliopad automatically renew. (See id. at 3–4.)

By letter dated June 21, 2017, Rapid Systems argues that it is entitled to sell Agencypad because it "has always sold Agencypad," since before this dispute began. (See "June 21 Letter, Dkt. No. 329, at 1.) Rapid Systems argues that while the Court's prior relevant orders concerned the parties' development of new products, "[t]he Orders have nothing to do with Rapid Systems'[s] sales of the existing Agencypad." (Id. at 2.) Rapid Systems attached a letter dated December 14, 2016 from C.D.S.'s prior counsel that "terminated the right of Rapid Systems to sell [C.D.S.'s and CDS SARL's] respective products, Agencypad and CDS6, in any market, worldwide" and demanded royalties due to C.D.S. for prior sales of Agencypad. (Id. Ex. 1.) Rapid Systems's response, also attached, denies that C.D.S. has the authority to terminate Rapid Systems's rights to sell Agencypad. (See id. Ex. 2.) As to C.D.S.'s requests regarding Portfoliopad users, Rapid Systems rests on its earlier submissions. (See id. at 3.)

## II. DISCUSSION

### A. RAPID SYSTEMS'S SALES OF AGENCYPAD

The issue of Rapid Systems's sales of Agencypad has not previously been before this Court. The Preliminary Injunction Order directed Rapid Systems to provide C.D.S. "access" to the tools it needed to continue operating its business, but C.D.S. did not seek, and the Court did not issue, an order directing Rapid Systems to cease any sales of Agencypad at that time. C.D.S., 190 F.Supp.3d at 376, 378.

Nor did any of the Court's subsequent orders in this case prohibit Rapid Systems from selling Agencypad. The Court's Order dated November 4, 2016 found that, although Rapid Systems was free to work on developing new products relevant to its business, because the ownership of Agencypad is disputed, Rapid Systems could not use Agencypad as a basis for its new products. See C.D.S., Inc. v. Zetler, 217 F.Supp.3d 713, 717 (S.D.N.Y. 2016). Rapid Systems subsequently informed the Court that it had prepared for the day when it might prevail in this action by developing a new version of Agencypad that it would sell under its own name, but the Court found that Rapid Systems's development efforts did not violate the Preliminary Injunction Order "because that product [was] not available for sale ...." C.D.S., Inc. v. Zetler, No. 16 CIV. 3199, 2017 WL 1019499, at *5 (S.D.N.Y. Feb. 24, 2017). At no time was the Court aware of or issued any order regarding prior sales by Rapid Systems of the existing version of Agencypad.

The first time the Court was made aware that Rapid Systems was selling Agencypad was in C.D.S.'s memorandum in support of its motion to adopt the May 17 Report. (See "May 25 Memorandum," Dkt. No. 301, at 12–14.) In a sworn declaration also dated May 25, 2017, Treat, C.D.S.'s CEO, stated that "this week we have learned that defendants are attempting to sell, and have made sales of Agencypad, passing Agencypad off as its own

product." ("Treat Declaration," Dkt. No. 302, ¶ 6.) C.D.S.'s position that it was unaware until last month that Rapid Systems was selling Agencypad stands in stark contrast to Rapid Systems's contention that it "has <u>always</u> sold Agencypad." (June 21 Letter at 1.) C.D.S.'s position is also hard to reconcile with its December 14, 2016 letter to Rapid Systems purporting to terminate Rapid Systems's right to sell Agencypad. (<u>See</u> June 21 Letter at Ex. 1.)

█ If Rapid Systems has sold Agencypad since that application's inception, it would be consistent with the purpose of the Preliminary Injunction Order to allow Rapid Systems to continue to do so. As the Court has previously noted, "[p]reliminary injunctions under Rule 65 are designed to preserve the status quo between the parties before the court pending a decision on the merits of the case at hand." <u>C.D.S.</u>, 2017 WL 1019499, at *5 (quoting <u>In re Baldwin–United Corp. (Single Premium Deferred Annuities Ins. Litig.)</u>, 770 F.2d 328, 338 (2d Cir. 1985)). To accomplish that purpose, the Preliminary Injunction Order did not provide C.D.S. exclusive access to the tools necessary to maintain and sell Agencypad, but instead "grant[ed] C.D.S. access on a co-equal basis with Rapid Systems to the accounts and tools necessary for C.D.S. to conduct business while this matter is pending." <u>C.D.S.</u>, 190 F.Supp.3d at 377. If Rapid Systems was selling Agencypad at the time of the Preliminary Injunction Order, an order at this stage prohibiting it from doing so would amount to a new injunction and would be inconsistent with the Preliminary Injunction Order's "purpose of allowing C.D.S. and Rapid Systems to continue operating their businesses." <u>C.D.S.</u>, 2017 WL 1019499, at *6. On the other hand, allowing Rapid Systems to enter the exact same business as C.D.S.—selling Agencypad—for the first time while this litigation is ongoing would

undermine the Preliminary Injunction Order's purpose of preserving the status quo.

Whether Rapid Systems was selling Agencypad prior to the Preliminary Injunction Order, however, is an issue of fact the Court cannot determine on the current record. Accordingly, the parties are directed to file declarations attesting to facts and attaching exhibits relevant to this disputed issue by not later than June 30, 2017.

## B. C.D.S.'S BUNDLED SALES OF AGENCYPAD AND PORTFOLIOPAD

█ The Court is persuaded that, because this most recent dispute concerns C.D.S. customers' access to Portfoliopad, which is governed by the EDA, the Court lacks authority to grant the requested relief. C.D.S.'s contention that it is "not asking the Court to enforce any breach of the EDA" is meritless. (June 19 Letter at 2.) First, no cause of action arising out of C.D.S.'s contracts with its customers are before the Court, nor are any of those customers parties to this action. Second, C.D.S.' admits that the EDA, not any contracts between C.D.S. and its users, "requires defendants to continue to service . . . existing customer agreements of [C.D.S.]" (<u>Id.</u>) C.D.S. also admits that "the EDA is not before this Court. That's an issue for the Court in Paris." (May 12 Transcript at 13:22.)

C.D.S. nonetheless argues that because some of its customers have bought Agencypad and Portfoliopad as a bundled product, the June 2 Order requires Rapid Systems to allow C.D.S.'s customers access to the Portfoliopad application. C.D.S.'s reading of the June 2 Order cannot be reconciled with its counsel's representation to this Court that C.D.S. "can continue to sell Agencypad as long as they don't sell Portfoliopad with it after the EDA expires."

(May 12, 2017 Transcript at 13:20–21.) C.D.S. also represented that C.D.S.'s ability to service existing Portfoliopad customers is governed by the EDA. (See id. at 14:4–9.)

An order from this Court directing Rapid Systems to continue to provide C.D.S.'s customers with access to Portfoliopad would amount to ordering Rapid Systems to continue complying with a contract that Rapid Systems has terminated and that is not properly before this Court. Whether or not C.D.S. has a right under the EDA to the remedy it seeks is not a dispute this Court can resolve.

### III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that plaintiff C.D.S. Inc. ("C.D.S.") and defendants Bradley Zetler, CDS LLC and Rapid Systems CC (collectively, "Rapid Systems") are directed to submit, by not later than June 30, 2017, declarations providing any documentation and other evidentiary support the parties possess relating to Rapid Systems's sales of Agencypad; and it is further

**ORDERED** that the request of C.D.S. for an order directing Rapid Systems to register all new users of Agencypad bundled with Portfoliopad as requested by C.D.S. (Dkt. Nos. 311, 320, 328) is **DENIED**; and it is further

**ORDERED** that the request of C.D.S. for an order directing Rapid Systems to permit renewals of existing contracts between C.D.S. and its customers for Agencypad bundled with Portfoliopad (Dkt. No. 328) is **DENIED**; and it is further

**ORDERED** that the request of C.D.S. for an order directing Rapid Systems not to terminate the access of C.D.S. clients to the Portfoliopad application (Dkt. No. 321) is **DENIED**; and it is further

**ORDERED** that the request of C.D.S. for sanctions of Rapid Systems and its counsel (Dkt. Nos. 321, 328) in connection with the matters at issue in this Order is **DENIED**.

**SO ORDERED.**