**C.D.S., INC., Plaintiff,**

**v.**

**Bradley ZETLER, et al., Defendants.**

**16 Civ. 3199 (VM)**

United States District Court, S.D. New York.

Signed 07/14/2017

Joseph J. Fleischman, Edward George Sponzilli, Robert Mahoney, Norris McLaughlin & Marcus, PA, Bridgewater, NJ, Anna Sydney Park, Rosner, Nocera & Ragone, LLP, Jeremy Evan Deutsch, Deutsch, Metz & Deutsch, LLP, Ami Bhatt, Norris McLaughlin & Marcus, P.A., Siddartha Rao, Rao Law Group, David Leichtman, David H. Brill, Richard A. Mescon, Shevani Jaisingh, Tatsuya Adachi, Leichtman Law PLLC, Alfred N. Metz, Andrew Parfomak, Christian Vincent Cangiano, New York, NY, for Plaintiff.

Ihsan Dogramaci, Joshua Martin MacLeod, The Law Office of Ihsan Dogramaci, Lewis P. Trippett, Higgins & Trippett L.L.P., New York, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, United States District Judge.

Plaintiff C.D.S. Inc. ("C.D.S.") commenced this action against defendants Bradley Zetler ("Zetler"), CDS, LLC, and Rapid Systems CC (collectively with Zetler and CDS, LLC, "Rapid Systems") alleging in its complaint various violations of state and federal law. ("Complaint," Dkt. No. 1.) These claims arise out of the parties' disputes relating to the computer software services they provide to their clients in the fashion industry. Rapid Systems has asserted several direct and derivative claims against C.D.S.; its CEO, Diane Treat ("Treat"); three directors of C.D.S., Jerome Viollon ("Viollon"), Christelle Riot ("Riot"), and Christophe Racle ("Racle"); the majority shareholder of C.D.S., Jerome Marechaux ("Marechaux"); and against CDS SARL, a French company majority-owned by Marechaux that employs Viollon, Riot, and Racle (collectively, the "Counterclaim Defendants").

Before the Court are C.D.S.'s requests for (1) an order directing Rapid Systems to stop selling Agencypad; (2) reconsideration of the Court's Order dated June 22,

2017; (3) an order requiring Rapid Systems to not turn off any Agencypad customer's access to Agencypad and Portfoliopad; and (4) oral argument regarding these requests. (See "Response," Dkt. No. 342; "June 29 Letter," Dkt. No. 340; "July 5 C.D.S. Letter," Dkt. No. 346.) For the reasons stated below, C.D.S.'s requests are all denied.

## I. BACKGROUND

### A. PROCEDURAL BACKGROUND

On June 6, 2016, this Court granted C.D.S.'s motion for a preliminary injunction and ordered Rapid Systems to provide C.D.S. access to a number of accounts and software tools necessary for C.D.S. to continue operating its business of selling Agencypad, a software application, to talent and booking agencies in the fashion industry pending resolution of the instant dispute. See C.D.S., Inc. v. Zetler, 190 F.Supp.3d 375, 376 (S.D.N.Y. 2016) (the "Preliminary Injunction Order"). Rapid Systems appealed the Preliminary Injunction Order, and the Second Circuit affirmed. See C.D.S. Inc. v. Zetler et al., 691 Fed.Appx 33, 35, No. 16-2346, 2017 WL 2347559, at *2 (2d Cir. May 31, 2017).

By letter dated May 8, 2017, Rapid Systems informed the Court that it had terminated an Exclusive Distributorship Agreement (the "EDA") under which C.D.S. had been selling Portfoliopad, another software application that, pursuant to the EDA, is property of Rapid Systems. (See "May 8 Letter," Dkt. No. 291.) The EDA, to which C.D.S., CDS SARL and Rapid Systems are parties, is governed by French law and contains a forum selection clause vesting exclusive jurisdiction over disputes under the EDA in the Paris Commercial Court. (See Dkt. No. 306-3 at 5; May 12, 2017 Hearing Transcript at 4:19-23, 7:9-12.)

The Court has since received numerous letters from the parties relating to Rapid Systems's termination of access for C.D.S. and its customers to certain functions of Agencypad and Portfoliopad in connection with the termination of the EDA. (See Dkt. Nos. 292, 293, 296, 311, 314, 318-323, 328, 329.) In this correspondence, C.D.S. requested, among other things, that the Court (1) order Rapid Systems to stop selling or attempting to sell Agencypad pending resolution of this action, and (2) direct Rapid Systems not to terminate access to Agencypad or Portfoliopad for any C.D.S. customers.

By Order dated June 2, 2017, the Court adopted a recommendation and report by the Special Master pursuant to which C.D.S. would have the ability to edit agencies and users of Agencypad—functions that Rapid Systems had discontinued in connection with its termination of the EDA. See C.D.S., Inc. v. Zetler, 254 F.Supp.3d 625, 631-32, 634-35, No. 16 CIV. 3199, 2017 WL 2537816, at *5, *8 (S.D.N.Y. June 2, 2017) ("June 2 Order"). By Order dated June 22, 2017, the Court (1) directed the parties to submit declarations providing evidentiary support relating to Rapid Systems's sales of Agencypad; (2) denied C.D.S.'s request for an order requiring Rapid Systems to register all new users of Agencypad bundled with Portfoliopad; (3) denied C.D.S.'s request for an order directing Rapid Systems to permit renewals of existing contracts between C.D.S. and its customers for Agencypad bundled with Portfoliopad; (4) denied C.D.S.'s request for an order directing Rapid Systems not to terminate the access of C.D.S. clients to the Portfoliopad application; and (5) denied C.D.S.'s request for sanctions of Rapid Systems and its counsel. See C.D.S., Inc. v. Zetler, 258 F.Supp.3d 359, 364, No. 16 CIV. 3199, 2017 WL 2937573, at *5 (S.D.N.Y. June 22, 2017) ("June 22 Order").

On June 30, 2017, C.D.S. submitted a "response" to the June 22 Order. (See "Response," Dkt. No. 342.) C.D.S.'s Response seeks, among other things, reconsideration of those parts of the June 22 Order that concern Portfoliopad customers and requests oral argument regarding these issues. (See id. at 1.) C.D.S. argues that its ability to (1) renew its existing contracts with customers, and (2) adding new users under existing C.D.S. contracts, are "inextricably connected to the Court's preliminary injunction." (Id.) C.D.S. argues that these issues arise from Rapid Systems's tortious interference with C.D.S.'s customer contracts—not enforcement of the EDA—and impacts C.D.S.'s ability to continue doing business pending trial of this matter. (See id. at 1–2.)

By two separate letters, C.D.S. again requests Court intervention regarding its clients' access to Agencypad and Portfoliopad. By letter dated June 29, 2017, C.D.S. alleges that Rapid Systems "turned off the access of a [C.D.S.] Agencypad client so that the client could not log into Agencypad or Portfoliopad." ("June 29 Letter," Dkt. No. 340, at 1.) C.D.S. alleges that this client renewed its contract with C.D.S. on May 2, 2017, six days prior to Rapid Systems's termination of the EDA. (See id.) C.D.S. has provided a copy of this contract to Rapid Systems but declined to provide communications between C.D.S. and the client regarding renewal of the contract. (See id.) C.D.S. requests "an order requiring [Rapid Systems] not to turn any Agencypad customers' access off without a prior Court order . . . ." (Id.)

By letter dated July 5, 2017, C.D.S. again requests "an order requiring defendants not to turn any Agencypad customers' access off." ("July 5 CDS Letter," Dkt. No. 346.) C.D.S. alleges that Rapid Systems turned off "the Portfoliopad features" for a C.D.S. client based in Chile. (Id.)

C.D.S. further alleges that Rapid Systems contacted the client, claiming that the client's contract with C.D.S. was invalid and that the client could get access to Portfoliopad only if it signed a new contract with Rapid Systems for both Agencypad and Portfoliopad. (Id.)

By letter dated July 5, 2017, Rapid Systems responded to C.D.S.'s requests for Court intervention. ("July 5 Opposition Letter," Dkt. No. 347.) Rapid Systems argues that C.D.S.'s request concerns C.D.S. customers "who have accessed Portfoliopad but for whom Rapid Systems had no record of an existing contract nor of the Portfoliopad commission being paid by C.D.S. . . . ." (Id. at 1.) With respect to C.D.S.'s June 29 Letter, Rapid Systems' contends that it disconnected the customer from Agencypad and Portfoliopad because of "concerns about the customer's right to use Portfoliopad" and that C.D.S. did not provide the customer with "unbundled" Agencypad, even though the Court's June 2 Order gives C.D.S. the ability to sell Agencypad without bundling it with Portfoliopad. (Id. at 2.)

By separate letter also dated July 5, 2017, Rapid Systems opposes C.D.S.'s request for reconsideration. ("June 5 Reconsideration Letter," Dkt. No. 348.) Rapid Systems argues that Rapid Systems's request for reconsideration is without merit and, in any event, needs to be brought as a separate motion to allow Rapid Systems an opportunity to fully respond. (Id. at 1–2.)

## B. DECLARATIONS

On June 30, 2017, C.D.S. and Rapid Systems submitted declarations relating to Rapid Systems's sales of Agencypad. Rapid Systems submitted a declaration from Zetler, who states that, since Agencypad was first introduced, Rapid Systems has invoiced 147 different agencies for that product. (See "Zetler Decl.," Dkt. No. 339,

¶ 2.) Zetler attaches two exhibits showing that Rapid Systems first sold Agencypad to what appears to be a South African customer on June 25, 2012, while C.D.S.'s first sale in the United States was on June 28, 2012. (See id. ¶ 4, Exs. 1, 2.)

C.D.S. submitted declarations from Marechaux, Viollon, and Treat, attaching a total of 13 exhibits. (See "Marechaux Decl.," Dkt. No. 343; "Viollon Decl.," Dkt. No. 344; "Treat Decl.," Dkt. No. 345 (collectively, the "C.D.S. Declarations").) According to the C.D.S. Declarations, C.D.S. sold Portfoliopad outside South Africa pursuant to the 2001 EDA. (See Marechaux Decl. ¶¶ 4–6.) C.D.S paid Rapid Systems a 30–percent commission on any sales of Portfoliopad as a stand-alone product, a 15–percent commission on any sales of Portfoliopad bundled with Agencypad, and no commission on sales of Agencypad without Portfoliopad. (Viollon Decl. ¶ 3.)

In 2003, Rapid Systems, C.D.S. and CDS SARL entered a Franchise Agreement, pursuant to which Rapid Systems sold C.D.S. products in South Africa. (See Marechaux Decl. ¶¶ 7–9.) Like the EDA, the Franchise Agreement has a French forum-selection clause. (See Marechaux Decl., Ex. B.) In 2012, C.D.S. launched Agencypad and started selling Agencypad as a bundle with Portfoliopad, under one contract and price. (See Marechaux Decl. ¶ 11.) Also in 2012, Zetler and Marechaux verbally agreed to amend the Franchise Agreement to allow Zetler to sell C.D.S. products in Australia and New Zealand. (See id. ¶ 12.) In 2016, C.D.S. terminated the verbal agreement allowing Rapid Systems to sell Agencypad in Australia and New Zealand. (See Marechaux Decl. ¶ 14.)

Although the Zetler Declaration and the C.D.S. Declarations all support Rapid Systems's contention that it has sold Agencypad essentially since Agencypad was developed, the record unambiguously shows that Rapid Systems's sales efforts were directed at customers in South Africa, Australia and New Zealand. Rapid Systems, C.D.S. and CDS SARL "divided up the globe into separate territories, and each sold the [Agencypad] product in its respective territory." (Zetler Decl. ¶ 3; see also Treat Decl. ¶ 3; Marechaux Declaration ¶¶ 2, 13, 16.) While C.D.S.'s territory included North America and CDS SARL's territory included Europe, Rapid Systems's territory was, from 2012 until 2017, limited to South Africa, Australia and New Zealand. (See Marechaux Decl. ¶ 13, 14, 16; Viollon Decl. ¶¶ 4–5.)

Rapid Systems admits that it did not sell Agencypad outside South Africa, Australia and New Zealand prior to December 2016. Zetler states that, in December 2016, Rapid Systems terminated the EDA with CDS SARL and notified C.D.S. that its exclusivity rights under the EDA were terminated. (Zetler Decl. ¶ 5.) Following that termination, Rapid Systems "began selling Portfoliopad and Agencypad in the EDA's areas where they were previously sold by C.D.S. SARL and C.D.S. . . . under the EDA." (Id.) Rapid Systems sold Agencypad for the first time in the United States in April 2017. (See id. ¶ 5–6.)

The Treat Declaration outlines several instances of Rapid Systems attempting to sell Agencypad to C.D.S. customers in early 2017. (Treat Decl. ¶¶ 9–14, Exs. A–F.) In one case, Rapid Systems represented that, because the customer had purchased Agencypad and Portfoliopad as a bundle, C.D.S. "is not able' to offer [the customer] either product" and that the customer needed to either contract with C.D.S. for Agencypad alone or purchase both products from Rapid Systems. (Treat Decl. ¶ 10, Exs. B–1, B–2, B–3.)

## II. DISCUSSION

Although C.D.S. appears to argue that its submissions all concern the issue of

Rapid Systems's tortious interference with C.D.S.'s contracts with its customers, C.D.S. has not brought such a claim, and C.D.S. effectively seeks an order from the Court directing Rapid Systems to (1) cease sales of Agencypad, and (2) provide access to Agencypad and Portfoliopad for any C.D.S. customer who has a contract for both products.

## A. RAPID SYSTEMS'S SALES OF AGENCYPAD

C.D.S. first requests that the Court direct Rapid Systems to cease any attempts to sell Agencypad to C.D.S.'s existing or prospective customers located anywhere other than in South Africa, Australia and New Zealand. The declarations submitted by the parties support C.D.S.'s position that Rapid Systems is, for the first time since shortly after Agencypad was first developed in 2012, selling Agencypad in direct competition with C.D.S. to customers outside South Africa, Australia and New Zealand. (See Marechaux Decl. ¶¶ 7–12; Treat Decl. ¶¶ 3–9; Zetler Decl. ¶ 5.)

There is, however, no order or agreement before this Court that explicitly prevents Rapid Systems from selling Agencypad in the United States or elsewhere. The EDA concerns only C.D.S.'s sale of Rapid Systems's products—particularly Portfoliopad—and is in any event not before this Court. The 2003 Franchise Agreement between the parties allows Rapid Systems to sell C.D.S.'s products in South Africa, but that agreement has expired and, like the EDA, has a forum-selection clause mandating that any disputes under that agreement be litigated in France. The alleged verbal amendment of the Franchise Agreement allowed Rapid Systems to sell C.D.S.'s products in Australia and New Zealand, but C.D.S.'s submissions do not appear to allege that Rapid Systems's actions constitute a breach of that verbal agreement. Indeed, C.D.S. alleges that it

has "revoked [its] prior consent" to allow Rapid Systems to sell Agencypad in those territories. (Marechaux Decl. ¶ 14.) Given this background, there is little basis for C.D.S.'s argument that, while Rapid Systems's sales of Agencypad in South Africa, Australia and New Zealand after C.D.S.'s revocation belongs "in a different proceeding," its sales of Agencypad "in the rest of the world" is properly before this Court. (Marechaux Decl. ¶ 14.)

Although C.D.S. argues that Rapid Systems's actions violate the Preliminary Injunction Order, that order does not address Rapid Systems's sales of Agencypad. "The Preliminary Injunction Order directed Rapid Systems to provide C.D.S. 'access' to the tools it needed to continue operating its business, but C.D.S. did not seek, and the Court did not issue, an order directing Rapid Systems to cease any sales of Agencypad at that time." C.D.S., 258 F.Supp.3d at 362, 2017 WL 2937573, at *3 (citing C.D.S., Inc. v. Bradley Zetler, 190 F.Supp.3d 375, 378 (S.D.N.Y. 2016)). Thus, while directing Rapid Systems to cease sales of Agencypad outside South Africa, Australia and New Zealand may be necessary to maintain the status quo, such a directive would be tantamount to a new preliminary injunction granting relief not previously requested by the parties and not supported by the record before the Court or the factual findings that formed the basis for the Preliminary Injunction Order. The Court thus concludes that the Preliminary Injunction Order would not warrant extending its terms to encompass the directives C.D.S. now requests in this proceeding.

## B. RAPID SYSTEMS'S INTERRUPTION OF SERVICE FOR C.D.S. CUSTOMERS WITH CONTRACTS FOR BUNDLED AGENCYPAD AND PORTFOLIOPAD

C.D.S.'s Response, seeking reconsideration of the June 22 Order, and C.D.S.'s

letters dated June 29 and July 5, 2017, all seek the same relief: An order directing Rapid Systems to refrain from terminating service for any C.D.S. customer who has bundled services for Portfoliopad and Agencypad. (See Response at 1–2; June 29 Letter; July 5 C.D.S. Letter.)

■ None of the new facts included in the C.D.S. Declarations warrant reconsideration of the June 22 Order. Reconsideration of a previous order by the court is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F.Supp.2d 613, 614 (S.D.N.Y. 2000)(internal citations and quotation marks omitted). "A motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). The situation facing C.D.S., while potentially disruptive to its business, concerns its customers' ability to continue using Portfoliopad in conjunction with Agencypad. That exact issue was addressed by the Court in the June 22 Order, which found that because this dispute "concerns C.D.S. customers' access to Portfoliopad, which is governed by the EDA, the Court lacks authority to grant the requested relief." C.D.S., 258 F.Supp.3d at 363, 2017 WL 2937573, at *4. C.D.S.'s motion for reconsideration is therefore denied.

Like its motion for reconsideration, C.D.S.'s most recent correspondence seeks relief concerning its customers' access to Portfoliopad. As the Court held in the June 22 Order, this Court is not the proper forum to seek such relief. C.D.S. does not dispute Rapid Systems's contention that C.D.S. can provide Agencypad to any of its customers without Rapid Systems's consent and without any additional intervention from this Court. Instead, C.D.S.

believes that because the ownership of Agencypad is before this Court, and because each of the customers at issue has a contract with C.D.S. for Agencypad and Portfoliopad, this Court should order Rapid Systems to continue providing access to both applications. As C.D.S. has repeatedly admitted, however, Rapid Systems is the owner of the Portfoliopad application, and C.D.S.'s ability to provide Portfoliopad to its customers is governed by the EDA. (See Marechaux Decl. ¶¶ 5, 9; see also C.D.S., 258 F.Supp.3d at 363–64, 2017 WL 2937573, at *4 (citing admissions by C.D.S.).)

The parties previously agreed that any disputes concerning the parties' obligations under the EDA must be brought in French Court. It is thus beyond the power of this Court to order Rapid Systems to allow continued service for C.D.S. customers who have contracts for Portfoliopad. C.D.S.'s requests for an order directing Rapid Systems to continue providing access to Portfoliopad are therefore denied.

The Court further finds that oral argument to further address C.D.S.'s requests is unnecessary. As the preceding discussion makes clear, both parties have had ample opportunity since May 8, 2017 to raise with the Court any factual or legal argument regarding the need for further intervention. The parties liberally availed themselves of that opportunity by further swelling the record of this litigation with several more rounds of filings. The Court is therefore not persuaded that oral argument regarding C.D.S.'s requests would be any more illuminating or amount to a productive use of the parties' or the Court's resources.

## III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the request of plaintiff C.D.S. Inc. ("C.D.S.") for an Order granting additional preliminary injunctive relief directing defendants herein to cease sales of Agencypad products and services is **DENIED** insofar as beyond the scope of the Court's Preliminary Injunction Order dated June 6, 2016; and it is further

**ORDERED** that the request of C.D.S. (Dkt. No. 342) for reconsideration of the Court's Order dated June 22, 2017 (Dkt. No. 330) is **DENIED**; and it is further

**ORDERED** that the request of C.D.S. for an Order directing Rapid Systems not to terminate the access of C.D.S. clients to the Portfoliopad application (Dkt. Nos. 340, 346) is **DENIED**; and it is further

**ORDERED** that C.D.S.'s request for oral argument is **DENIED**.

**SO ORDERED.**